UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL E. SCHERFFIUS,

Plaintiff,

v.

CHRISTOPHER SMITH, et al.,

Defendants.

No. 2:13-cv-1277 JAM DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs. Before the court is defendants' motion for summary judgment. For the reasons set forth below, this court will recommend defendants' motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's second amended complaint ("SAC") filed here on July 20, 2015. (ECF No. 25.) He alleges conduct by defendants from 2009 to 2012 when he was incarcerated at Mule Creek State Prison ("MCSP"). On screening, the court found plaintiff stated cognizable claims for relief against the following defendants: (1) Christopher Smith, the Chief Physician and Surgeon at MCSP; (2) Dr. Stephen Tseng; (3) Physician's Assistant ("PA") Karen

////

////

Todd; (4) Dr. B. Barnett;[1] (5) Dr. Parnell Galloway;[2] (6) Dr. Jalal Soltanian-Zadeh; and (7) Dr. G. Williams.  (ECF No. 27.)

Plaintiff states that he currently suffers from, or during the relevant time period suffered from, the following conditions:  fibromyalgia, cervical spinal stenosis, lumbar radiculopathy, scoliosis, degenerative disc disease, hypertension, hyperlipidemia, urinary problems, edema, migraine headaches, and folliculitis.  As a result, he suffers, among other things, severe pain in his back and neck.  Plaintiff alleges defendants either acted or failed to act to treat his pain properly.  (ECF No. 25 at 10-40.)

Defendants filed an answer in November 2016.  (ECF No. 36.)  On June 2, 2017, defendants filed the present motion for summary judgment.  (ECF No. 42.)

After receiving several extensions of time to oppose defendants' motion, plaintiff sought a stay of these proceedings based on an anticipated surgery and his many health problems.  Defendants did not object to the stay and the court granted it on October 18, 2017.  (ECF No. 55.)  Plaintiff sought, and was granted, two additional stays.  (ECF Nos. 61, 67.)  The court denied plaintiff's fourth request for a stay and ordered plaintiff to file an opposition to the motion for summary judgment.  (ECF No. 74.)  On August 30, 2019, plaintiff filed his opposition documents.  (ECF Nos. 77, 78, 79, 80.[3])  Defendants did not file a reply.

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the following grounds:  (1) plaintiff failed to exhaust his administrative remedies with respect to most of his claims; (2) plaintiff fails to state a cognizable claim under the Eighth Amendment for the denial of his appeals; (3) the undisputed

---

[1] Plaintiff frequently identifies this defendant as "Barnette."  However, defendants identify him as Barnett and that identification is confirmed by the records provided by both parties.

[2] Plaintiff frequently identifies this defendant as "Gallow."  However, defendants identify him as Galloway and that identification is confirmed by the records provided.

[3] Plaintiff requested notification from the court whether it had received his Memorandum of Points and Authorities, Objections to Defendants' Statement of Undisputed Facts, and Judicial Notice.  (ECF No. 81.)  This court confirms that each of those documents was filed here on August 30.

facts show that defendants were not deliberately indifferent to plaintiff's medical needs and his Eighth Amendment claims are otherwise meritless; and (4) defendants are entitled to qualified immunity.

## I. Applicable Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

1   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

2   existence of this factual dispute, the opposing party typically may not rely upon the allegations or

3   denials of its pleadings but is required to tender evidence of specific facts in the form of

4   affidavits, and/or admissible discovery material, in support of its contention that the dispute

5   exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that

6   is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified

7   complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise

8   from personal knowledge and contain specific facts admissible into evidence.  See Jones v.

9   Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.

10  1995) (accepting the verified complaint as an opposing affidavit because the plaintiff

11  "demonstrated his personal knowledge by citing two specific instances where correctional staff

12  members . . . made statements from which a jury could reasonably infer a retaliatory motive");

13  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d

14  407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because

15  it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury

16  pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would

17  an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that

18  the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

19  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

20  could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

21  242, 248 (1986).

22          To show the existence of a factual dispute, the opposing party need not establish a

23  material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be

24  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

25  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

26  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

27  order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations

28  omitted).

4

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B.  Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**C.  Legal Standards for Exhaustion of Administrative Remedies**

Defendants allege plaintiff failed to exhaust any of his claims against defendants Todd, Barnett, Williams, and Soltanian-Zadeh, and failed to exhaust many of his claims against defendants Tseng and Smith.

////

////

5

## 1. PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

////

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

**2. California's Inmate Appeal Process**

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id. § 3084.1(b).

////

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Id. §§ 3084.2(a)(4).  The appeal should not involve multiple issues that do not derive from a single event.  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

**D. Legal Standards for Eighth Amendment Deliberate Indifference**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs." Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has two

elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in

further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974

F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

"the presence of a medical condition that significantly affects an individual's daily activities." Id.

at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that

prison officials responded to the serious medical need with deliberate indifference.  See Farmer,

511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

delay, or intentionally interfere with medical treatment, or may be shown by the way in which

prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th

Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to

medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter

Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also

Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**E.  Legal Standards for First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).  The filing of an appeal or staff complaint qualifies as protected conduct under the First Amendment.  Id. at 568.

**II.     Plaintiff's Claims**

In the SAC, plaintiff primarily complains that each defendant failed to properly treat his pain and failed to properly record his symptoms.  Below, this court examines plaintiff's claims against each defendant, determines whether plaintiff has exhausted each claim, and, for those exhausted claims, determines whether there are disputed issues of material fact regarding the issue of deliberate indifference.

Plaintiff also mentions in his SAC, and frequently argues in his opposition to the summary judgment motion, that defendants should have known he required surgery.  To the extent plaintiff

is contending defendants violated his Eighth Amendment rights when they delayed surgical intervention, that issue is unexhausted. Plaintiff did not raise the issue in his prison appeals. Moreover, even if plaintiff properly raised the surgery issue, this court finds no material disputed issues of fact regarding it.

First, while plaintiff complains that defendants did not consider surgery for him, the record shows otherwise. Plaintiff was sent out for a surgical consultation twice and saw a neurologist in between those visits. On November 10, 2009, plaintiff was seen by neurosurgeon Karl Gregorious, M.D. Gregorious found "no signs of myelopathy" and did not feel plaintiff had lumbar radiculopathy. He opined that plaintiff was not at that time "a candidate for a lumbar spine procedure." However, if plaintiff's symptoms progressed, Gregorious felt he should be "referred back for consideration of an extensive decompressive operation." (ECF No. 42-6 at 14-15.)

In July 2010, plaintiff was seen by neurologist Donald Van Fossan, M.D. Dr. Fossan concluded that "[c]onservative management would certainly be preferable, however should this be intolerable, the next step would be an EMG of the upper extremities and possibly repeating MRI of the C-spine and referral back to Dr. Gregorious" (ECF No. 42-19 at 32.)

Gregorious saw plaintiff for a second time on February 7, 2012. He again found no evidence of myelopathy and again felt that plaintiff was not a candidate for lumbar spine surgery. (ECF No. 42-6 at 45-46.) Plaintiff was transferred to Valley State Prison in early 2013. Six months later, he was seen by a neurosurgeon who diagnosed cervical radiculopathy and myelopathy and recommended surgery. Plaintiff had surgery in August 2013. (See ECF No. 42-4 at 27.)

Plaintiff argues that defendants should have known Dr. Gregorious misdiagnosed him as not having lumbar radiculopathy or myelopathy. However, he provides little basis for this argument. Plaintiff points to an impression listed by defendant Tseng on March 25, 2010 that plaintiff had, among other things, lumbar radiculopathy. (See ECF No. 25-1 at 50.) However, it does not appear from plaintiff's medical records that this diagnosis was repeated. Further, Dr. Gregorious's 2012 examination of plaintiff did not reveal lumbar radiculopathy or other bases to

11

advise surgery at that time.  Therefore, plaintiff fails to show that Tseng's 2010 diagnosis would have expedited his surgery.

Defendants had a right to rely on the opinion of the specialist, a neurosurgeon, regarding plaintiff's need for surgery.  See Watkins v. Singh, No. 2:13-cv-0416 KJM CKD, 2015 WL 136015, at *3 (E.D. Cal. Jan. 9, 2015) ("It is generally not deliberate indifference to defer to a specialist."), aff'd sub nom. Watkins v. Bick, 668 F. App'x 220 (9th Cir. 2016).  Plaintiff provides no authority or factual basis for this court to conclude that any defendant acted improperly in relying on Dr. Gregorious's opinion that plaintiff was not a surgical candidate. Defendants are entitled to summary judgment on any claim that they were deliberately indifferent to plaintiff's need for surgery.

**A. Defendant Todd**

In the SAC, plaintiff claims the following actions or inactions of defendant Todd violated his Eighth Amendment rights to medical care:

(1)  At plaintiff's appointment with Todd on October 19, 2007, Todd failed to tell plaintiff his MRI results.

(2)  On January 13, 2009, Todd failed to refer plaintiff for a second epidural steroid injection ("ESI") and denied plaintiff Tramadol for his pain.

(3)  On July 10, 2009, Todd reported that plaintiff's back pain occurred on June 26, 2009 but plaintiff had been suffering from back pain long before that.

(4)  On August 2, 2010, Todd examined plaintiff for a pain management follow-up and refused to follow a neurologist's recommendation that plaintiff have a new MRI and a new EMG. As a result, she was unable to correctly diagnose plaintiff's conditions.  (ECF No. 25 at 16-18.)

Plaintiff contends Appeal No. MCSP-C-08-011413 ("Appeal No. 11413") exhausted his claims against defendant Todd.  In this appeal, submitted on April 23, 2008, plaintiff complained that Todd did not properly treat his pain when she saw him on April 2, 2008.  (ECF No. 42-21 at 6.)  On July 16, 2009, Appeal No. 11413 was denied at the third level of review.  Because it pre-dates all but one of plaintiff's contentions against Todd, Appeal No. 11413 does not exhaust those

////

12

claims.  Further, the appeal did not mention plaintiff's allegation about Todd's conduct in October 2007, so that claim is not exhausted by this appeal as well.

Plaintiff also mentioned Todd in his Appeal No. MCSP-16-11-10583 ("Appeal No. 10583"), submitted on March 13, 2011.  (ECF No. 25-3 at 6.)  Therein, plaintiff challenged decisions made in March 2011 to discontinue his morphine.  Plaintiff was interviewed by defendant Todd at the first level of review for Appeal No. 10583.  Plaintiff contends Todd denied his appeal because plaintiff's "case was presented to the Pain Management Committee" about two months prior to the interview and "[i]t was decided opiates were not effective and to optimize antidepressants, which you are currently on."  She concluded that "[a]t this time prescribing Morphine and muscle relaxant is not medically indicated."  (ECF No. 25-3 at 10.)  In his statement of dissatisfaction with the first level of review, plaintiff complained that defendant Todd failed to consider his appeal and failed to consult with any supervisor, even though she is not a doctor.  (Id. at 9.)  This appeal was denied at the third level of review on November 30, 2011.  (Id. at 2-4.)

Plaintiff's Appeal No. 10583 did not raise the claims plaintiff made against Todd in the SAC.  Plaintiff identifies no other appeals in which he could have exhausted those claims.[4]

Accordingly, plaintiff's claims against Todd should be dismissed for failure to exhaust.

**B. Defendant Barnett**

Plaintiff complains of the following conduct by Barnett:

(1) On April 8, 2011, Barnett saw plaintiff for severe pain and muscle spasms.  Barnett did not have authority to prescribe pain medication for plaintiff and did not do so.  He took plaintiff to the pain management committee.

(2) On April 29, 2011, Barnett again saw plaintiff for severe pain and Barnett "made no changes."

---

[4] Plaintiff states that he identified defendants Todd and Barnett in "Appeal No. MCSP-16-11-10582." (Plt's Obj. to Stmt. of Undisp. Facts (ECF No. 78) at 19.)  However, in his opposition brief, plaintiff argues that he raised complaints about defendants Todd and Barnett in Appeal No. 10583.  Because there is no appeal numbered 10582 in the record, the court assumes plaintiff meant to refer to Appeal No. 10583 in his Objection to Defendants' Statement of Undisputed Facts.

(3)  At an appointment on June 3, 2011, Barnett failed to help plaintiff with his pain, submit any ideas to the pain management committee, or refer plaintiff to a pain specialist.

(4)  At an appointment on July 11, 2011, Barnett stated that "everything is within normal limits" but that was not true.  (ECF No. 25 at 37-39.)

Plaintiff states that he exhausted his claims against Barnett in Appeal No. 10583. However, Barnett is not mentioned in plaintiff's complaints reflected in that appeal.  (See ECF No. 25-3 at 6.)  Nor are the claims against Barnett raised in any of plaintiff's other appeals.

Accordingly, plaintiff's claims against Barnett are not exhausted and they should be dismissed from this action.

**C.  Defendant Williams**

Plaintiff alleges that on September 19, 2011, Williams gave him a home exercise program. Plaintiff complains that some of what Williams stated in his report was not true and that the exercise program did not "work very well."  (SAC (ECF No. 25 at 40).)  Plaintiff fails to provide proof of any appeal in which he complained of Williams' conduct on this date.

Plaintiff's claims against Williams are not exhausted and should be dismissed.

**D. Defendant Soltanian-Zadeh**

Plaintiff identifies the following conduct by defendant Soltanian-Zadeh that he alleges violated his Eighth Amendment rights:

(1)  On May 17, 2010, Soltanian-Zadeh saw plaintiff for a cholesterol level follow-up and for edema.  Without discussing it with plaintiff, Soltanian-Zadeh discontinued plaintiff's prescription for Lyrica, which was used to treat his fibromyalgia pain.

(2)  On July 2, 2010, Soltanian-Zadeh saw plaintiff for cholesterol, urine retention, and hypertension.  Plaintiff appears to object to Soltanian-Zadeh's description in his report of plaintiff's apparent lack of difficulty sitting and standing.  (ECF No. 25 at 33-34.)

This court finds that plaintiff has alleged one claim against Soltanian-Zadeh – that he was deliberately indifferent to plaintiff's serious medical needs when he discontinued plaintiff's Lyrica prescription in March 2010.

////

Plaintiff's second contention does not state a cognizable claim under § 1983 for deliberate indifference or otherwise because plaintiff fails to make any showing that Soltanian-Zadeh wrote that description with deliberate indifference to plaintiff's medical needs.

### 1. Has Plaintiff Exhausted his Claim against Soltanian-Zadeh?

Plaintiff raised the issue of Soltanian-Zadeh's discontinuation of Lyrica in his inmate Appeal No. MCSP 16-10-11357 ("Appeal No. 11357") on May 29, 2010. (ECF No. 42-16 at 6.) That appeal was not fully exhausted through the third level of review. After plaintiff submitted it to the third level, it was rejected because he added a complaint about the second level of review, in violation of appeal procedures. Plaintiff was invited to re-submit his appeal without the additional complaint. (Id. at 12.) He did not do so.

However, plaintiff again raised his concerns about Soltanian-Zadeh's discontinuation of Lyrica in Appeal No. MCSP-16-10-13163 ("Appeal No. 13163"), submitted on December 23, 2010. (ECF No. 25-3 at 37.[5]) While the primary focus of the appeal involved plaintiff's complaints against defendant Galloway, he included his complaint about Soltanian-Zadeh's discontinuation of Lyrica. (Id. at 39.) The reviewers at each level did not explain that they were not considering this complaint against Soltanian-Zadeh and, in fact, at the first level of review, the reviewer recognized that plaintiff was complaining about the actions of numerous doctors, including Soltanian-Zadeh. (Id. at 44.)

Because it is not disputed that plaintiff exhausted his Appeal No. 13163 through the third level of review, this court finds plaintiff has exhausted his claim regarding Soltanian-Zadeh's discontinuation of plaintiff's Lyrica prescription in March 2010.

### 2. Plaintiff's Medication History

The records provided by the parties show the following history of medications prescribed for plaintiff's pain and mental health during the relevant time period:

May 13, 2009 –Tramadol, Trazadone, Triamterene. (ECF No. 42-6 at 9)

August 31, 2009 – Tramadol, Triamterene, Methocarbamol. (ECF No. 42-6 at 13)

---

[5] Both parties submitted copies of plaintiff's appeals. The court refers to the copy that it finds most legible.

February 19, 2010 – Aspirin, Cymbalta, Doxazosin Mesylate, Doxepin, Lyrica, Methocarbamol, Oramorph (morphine), Salsalate. (ECF No. 42-6 at 16)

March 25, 2010 – Aspirin, Cymbalta, Doxazosin Mesylate, Doxepin, Methocarbamol, Oramorph (increased dose). (ECF No. 42-6 at 17)

May 17, 2010 - Aspirin, Cymbalta, Doxazosin Mesylate, Doxepin, Methocarbamol, Oramorph, Lyrica (to be tapered off). (ECF No. 42-13 at 10)

June 1, 2010 – Aspirin, Doxazosin Mesylate, Doxepin, Cymbalta, Methocarbamol, Morphine, Lyrica. (ECF No. 79 at 17.)  Tseng reinstated Lyrica because he felt plaintiff's edema was caused by morphine.  He ordered continuation of the morphine because he felt the benefits to plaintiff outweighed the risks.  (Id. at 15.)

June 22, 2010 - Aspirin, Doxazosin Mesylate, Doxepin, Cymbalta, Methocarbamol, Morphine, Trazadone, Triamterene.  Defendant Smith began tapering plaintiff off Lyrica on this date because it was non-formulary.  (ECF No. 79 at 19-20; ECF No. 42-3 at 11.)

July 2, 2010 – Aspirin, Doxazosin Mesylate (increased dose), Doxepin, Cymbalta, Methocarbamol, Morphine.

September 15, 2010 – Gabapentin (initial dose of 300 mg to be increased to 600 mg), morphine (change in dose), Baclofen.  (ECF No. 42-6 at 20).  Tseng prescribed Gabapentin as a replacement for Lyrica.  (ECF No. 42-17 at 48)

October 20, 2010 – Lyrica, Triamterene.  (ECF No. 42-6 at 22.)  Tseng discontinued Gabapentin due to plaintiff's allergic reaction to it and reinstituted Lyrica.  (ECF No. 79 at 37.)

November 17, 2010 – morphine, Lyrica, Nortriptyline.  (ECF No. 42-6 at 25)

December 27, 2010 – morphine, Lyrica, Cymbalta, Nortriptyline.  (ECF No. 79 at 34.)

March 2, 2011 – morphine, Lyrica, Cymbalta, Nortriptyline.  Tseng noted that the Pain Management Committee "has decided to w/draw opiates from this pt."  Morphine was being tapered off.  However, plaintiff was reporting a lot of pain.  Tseng prescribed a trial of Nortriptyline.  (ECF No. 79 at 43.)

March 8, 2011 – an appeal response shows that medications prescribed at that time were: Gabapentin and morphine for pain; duloxetine for fibromyalgia-related pain and Baclofen for

pain and spasms.  (ECF No. 42-17 at 3 , 15.)

July 26, 2011 - Cymbalta, Doxazosin Mesylate, Enalapril maleate, Nortriptyline, Lyrica, Trazadone, Triamterene.  (ECF No. 42-11 at 9.)

October 13, 2011 - Cymbalta, Doxazosin Mesylate, Lyrica, Trazadone, Triamterene, Enalapril. (ECF No. 42-8 at 14)

February 7, 2012 – Lyrica, Cymbalta, Trazodone, Nortriptyline.  (ECF No. 42-6 at 45)

September 6, 2012 - Cymbalta, Doxazosin Mesylate, Lyrica, Enalapril, Nortriptyline. (ECF No. 42-3 at 13)

### 3. Deliberate Indifference by Soltanian-Zadeh

Plaintiff contends that Soltanian-Zadeh was deliberately indifferent to his serious medical needs when he discontinued plaintiff's prescription for Lyrica.  There is no dispute that plaintiff has serious medical needs and that plaintiff suffered pain as a result of those needs.  The only question, then, is whether there are legitimate disputes of material fact that Soltanian-Zadeh acted with deliberate indifference.

Plaintiff's medical records show that after a May 17, 2010 appointment, Soltanian-Zadeh ordered plaintiff's Lyrica to be tapered off.  (ECF No. 42-13 at 10.)  In his declaration, Soltanian-Zadeh states that he discontinued Lyrica because he felt it may be the cause of plaintiff's edema. (Id. at 8.)  He felt that plaintiff's pain would be adequately controlled by the other medications he was taking:  Morphine, Cymbalta, and Robaxin.  (Id.)  Plaintiff's medical record shows that Soltanian-Zadeh ordered a follow-up appointment for plaintiff in fourteen days to discuss lab work and check on the status of the edema.  (Id. at 9.)  Plaintiff does not dispute that Soltanian-Zadeh discontinued Lyrica because he considered it a possible cause of edema.

To prove Soltanian-Zadeh acted with deliberate indifference, plaintiff must establish that he had "a state of mind more blameworthy than negligence."  Farmer, 511 U.S. at 835.  Plaintiff fails to explain what facts show Soltanian-Zadeh acted with deliberate indifference when he changed plaintiff's medications for a two-week period to determine whether Lyrica was causing plaintiff's edema.  After descriptions of his serious medical problems in his opposition brief, plaintiff simply goes on to summarize his medical records.  (See ECF No. 77 at 8-21.)

That list does not include any factual basis for this court to conclude that Soltanian-Zadeh's conduct violated the Eighth Amendment. Plaintiff simply states that Soltanian-Zadeh was aware plaintiff had serious medical conditions (id. at 19) and Soltanian-Zadeh discontinued the Lyrica prescription because he thought it might be the cause of plaintiff's edema (id. at 20). Plaintiff shows that defendant Tseng felt the edema was caused by morphine and re-prescribed Lyrica shortly after Soltanian-Zadeh discontinued it. (Id. at 20.)

Soltanian-Zadeh's reason for discontinuing plaintiff's Lyrica for a limited period of time had a medically reasonable purpose. Plaintiff presents no evidence to show that Soltanian-Zadeh's treatment of plaintiff's symptoms was done without regard to his pain, or with deliberate indifference to it. Nor does plaintiff show Soltanian-Zadeh's treatment was in any way medically unacceptable. A mere difference of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058.

This court finds no disputed material facts requiring a trial on the issue of defendant Soltanian-Zadeh's treatment of plaintiff on May 17, 2010. Defendants' motion for summary judgment should be granted on plaintiff's claims against Soltanian-Zadeh.

**E. Defendant Tseng**

Defendant Tseng saw plaintiff frequently from April 2009 through December 2012. In his SAC, plaintiff appears to describe each appointment, and Tseng's report on that appointment, and adds some complaints of Tseng's treatment within those descriptions. (ECF No. 25 at 18-33.) Rather than attempt to discern just what plaintiff is alleging in his SAC, this court looks to plaintiff's prison appeals to determine which claims against Tseng have been exhausted and may be pursued here.

**1. Exhausted Claims against Tseng**

In Appeal No. 10583, submitted on March 13, 2011, plaintiff complained that the pain management committee had decided to discontinue plaintiff's morphine. On March 2, 2011, defendant Tseng gave plaintiff that information and followed the committee's decision. In addition, plaintiff complained that Tseng discontinued his prescription for Baclofen. Plaintiff

18

stated that he was in severe pain as a result of the discontinuation of these medications. He sought reinstatement of his morphine and a muscle relaxant. (ECF No. 25-3 at 6, 8.) This appeal was denied at the third level of review on November 30, 2011. (Id. at 2-4.) Therefore, plaintiff has exhausted his claims that Tseng was deliberately indifferent to his serious medical needs when he discontinued plaintiff's morphine and Baclofen prescriptions.

In Appeal No. 13163 plaintiff mentions that defendant Tseng failed to document plaintiff's complaint of "electrical shocks throughout [his] limbs and over [his head]." (ECF No. 25-3 at 40.) This appeal was denied at the third level of review on October 24, 2011. (Id. at 2.) Accordingly, this allegation against Tseng is exhausted as well.

### 2. Deliberate Indifference by Tseng

First, while exhausted, plaintiff's claim regarding Tseng's failure to document his complaints of electrical shocks does not state a claim for relief under § 1983 because there is no indication Tseng omitted that information with deliberate indifference to plaintiff's medical needs With respect to plaintiff's claims regarding Tseng's discontinuation of his medications, plaintiff fails to create any disputed issues of fact to show Tseng acted with deliberate indifference.

### a. Background Facts

The following facts are derived primarily from Tseng's declaration and, except where noted, are undisputed.[6] On September 15, 2010, Tseng started plaintiff on Baclofen. (Tseng Decl. (ECF No. 42-4) ¶ 33.) Tseng noted that plaintiff was on a "good dose of morphine" and "was still complaining of inadequate pain relief." Because he was concerned about the risks of harm to plaintiff if the morphine dose was increased, Tseng added prescriptions for Gabapentin and Baclofen. (Id.)

In notes following plaintiff's appointment with Tseng on October 20, 2010, Tseng differentiated between plaintiff's "two different pain generators." (ECF No. 42-4, ¶ 35.) Tseng

---

[6] Plaintiff filed a document entitled Objection to Defendants' Statement of Undisputed Facts. (ECF No. 78.) While plaintiff "objects" to numerous factual statements, most of those objections dispute the doctors' medical opinions or treatment. They do not contend the factual statement itself is untrue. To the extent plaintiff has put forth evidence to dispute any of the relevant facts regarding Tseng's decisions regarding morphine and Baclofen, those disputes are discussed in the text.

identified both "myofascial pain (fibromyalgia)" and "anatomical pain (cervical disk and spinal disease)." Plaintiff had a "drug rash" at that visit which Tseng attributed to Gabapentin. He discontinued that drug and added Lyrica for plaintiff's myofascial pain. Tseng also noted that the Baclofen and morphine combination seemed to be controlling plaintiff's anatomical pain fairly well. (Id.)

At an appointment on November 17, 2010, Tseng re-evaluated plaintiff's pain. Because plaintiff had previously told him Lyrica had helped, Tseng was surprised to hear plaintiff state that his pain was worse. (ECF No. 42-4, ¶ 37.) Tseng felt that the "majority" of plaintiff's pain was myofascial rather than anatomical. He expressed concern that the "adequate trials of moderate opiates, Cymbalta, Lyrica, Gabapentin, (and) Baclofen" showed only minor benefits. (Id.) Because opioids "are ineffective for treatment of myofascial pain" and carried risks, Tseng decided to add Nortriptyline for a month. (Id.)

Tseng saw plaintiff again on December 7, 2010. (ECF No. 42-4, ¶ 38.) Tseng felt plaintiff's treatment program was failing. He doubted Baclofen was having "any significant benefit" and discontinued it. (Id.) He then referred plaintiff's case to the Pain Management Committee for review.

In early 2011, the Pain Management Committee determined that plaintiff should not continue to take morphine. Tseng informed plaintiff of that decision and ordered plaintiff to receive tapered doses of morphine.

### b. Are there disputes of material fact regarding whether Tseng was deliberately indifferent?

Plaintiff does little to argue that Tseng's decision to discontinue Baclofen was deliberately indifferent. He presents no facts to challenge Tseng's medical opinion that Baclofen was not having any significant benefit. That Tseng could have prescribed a higher dose of Baclofen before making a determination about its benefit does not indicate deliberate indifference. Plaintiff was taking a number of medications. Determining the proper dosages of each requires medical expertise. Plaintiff provides no basis for this court to conclude that Tseng acted with deliberate indifference when he discontinued the Baclofen rather than increasing its dose.

With respect to morphine, plaintiff fails to show that Tseng's decision to follow the Pain Management Committee's conclusion demonstrates deliberate indifference. The court finds there is no genuine dispute of material fact regarding Tseng's decision to wean plaintiff off morphine. Tseng's declaration, and plaintiff's medical records, show that Tseng exercised reasonable medical judgment to determine that it was in plaintiff's best interests to discontinue morphine. Then, when plaintiff complained of severe pain, Tseng added a new pain medication, Nortriptyline. (ECF No. 79 at 43.)

Doctors' decisions to discontinue narcotics or opioids in favor of safer medications have been found medically acceptable in other cases in this court. See e.g., Montiel v. Taher–Pour, No. 1:11cv2145 LJO DLB PC, 2014 WL 2574533 (E.D. Cal. June 09, 2014), rep. and reco. adopted, 2014 WL 3615801 (E.D. Cal. July 22, 2014) (granting defendants' motion for summary judgment on plaintiff's Eighth Amendment claim challenging abrupt discontinuance of Tramadol and four-day taper of Gabapentin, with the use of an alternative prescription for ibuprofen); Solomon v. Negrete, No. 2:10–cv–2103 WBS AC P, 2014 WL 546367 (E.D. Cal. Feb.11, 2014), rep. and reco. adopted, 2014 WL 1024567 (E.D. Cal. Mar.14, 2014) (granting defendants' motion for summary judgment on plaintiff's Eighth Amendment claim challenging the discontinuance of a morphine prescription, then tapering of Tramadol and Gabapentin over one-week period, with the use of an alternate prescription for ibuprofen); Fischer v. Algers, No. 2:12–cv-2595 MCE CKD P, 2014 WL 3385184 (E.D. Cal. July 10, 2014) (recommending defendants' motion for summary judgment be granted on plaintiff's Eighth Amendment claim challenging his taper by prison medical staff from morphine, to Tylenol 3 with codeine, to ibuprofen), rep. and reco. adopted, No. 2:12-cv-2595 MCE CKD P (E.D. Cal. Aug. 15, 2014). Plaintiff fails to provide any facts upon which a fact-finder could conclude that he was entitled to continue on opiates.

Plaintiff does not have a right to dictate what medications he is prescribed. Stiltner v. Rhay, 371 F.2d 420, 421 n.3 (9th Cir. 1967) (allegations that a prisoner feels he is not receiving the "the kind and quality of medical treatment he believes is indicated" does not demonstrate deliberate indifference). And, a difference of opinion between plaintiff and Tseng regarding plaintiff's course of care is insufficient to demonstrate Tseng acted with deliberate indifference.

Jackson, 90 F.3d at 332 (citing Sanchez, 891 F.2d at 242). In fact, the records before this court show that Tseng acted with concern about plaintiff's pain, attempted to determine the cause, and prescribed various medications to attempt to find the best ones to address plaintiff's pain.

Summary judgment should be granted for defendants on plaintiff's claims against Tseng.

**F. Defendant Smith**

Plaintiff complains of the following conduct by Smith:

(1) On June 22, 2010, facility C at MCSP was on lock down. Smith conducted a telephone interview with plaintiff regarding plaintiff's Appeal No. 11357 about Soltanian-Zadeh discontinuation of plaintiff's Lyrica prescription. Without examining plaintiff, Smith informed him that he could not have Lyrica because it was "non-formulary." Plaintiff explained that Tseng had reinstated the Lyrica prescription after Soltanian-Zadeh discontinued it. However, Smith insisted it should be terminated and provided no replacement.

(2) About a week after Smith discontinued plaintiff's Lyrica, he terminated plaintiff's muscle relaxant, Methocarbamol (also known as Robaxin), also without conducting an exam.

(3) On September 6, 2012, Smith "without any information" wrote a report about plaintiff's health that plaintiff states was incorrect in many respects. As a result, plaintiff's health care was denied or delayed. (ECF No. 25 at 34-36.)

**1. Has Plaintiff Exhausted his Claims against Smith?**

Smith interviewed plaintiff by telephone regarding his Appeal No. 11357. To the extent plaintiff contends he raised claims against Smith in that appeal, as this court found above, those claims cannot be exhausted because plaintiff did not exhaust Appeal No. 11357 through all three levels of review.

Plaintiff did, however, exhaust his claims regarding Smith's responsibility for discontinuing plaintiff's prescriptions to Lyrica and Methocarbamol, both of which plaintiff took for pain management. Plaintiff submitted Appeal No. MCSP-16-10-11837 ("Appeal No. 11837") on July 16, 2010. (ECF No. 42-17 at 5.) He stated therein that defendant Smith retaliated against him for filing the prior appeal against Soltanian-Zadeh by discontinuing the two medications. Lyrica and Methocarbamol. (Id. at 11.) He asked that Lyrica and other medications be reinstated

and that he be seen by a neurosurgeon, not the neurologist Smith had referred him to. (Id. at 12.) Plaintiff appealed through the third level of review, which was denied on March 8, 2011. (Id. at 2-4.)

Plaintiff also raised his claims that Smith discontinued his Lyrica in retaliation for submitting an appeal in Appeal No. 13163. (ECF No. 25-3 at 40.) This appeal was also denied at the third level of review. (Id. at 2.) This court finds plaintiff has exhausted his first two claims against defendant Smith. He has not exhausted the third claim regarding Smith's reporting, but that contention does not amount to deliberate indifference in any event.

### 2. Deliberate Indifference by Smith

#### a. Background

In his declaration, Smith states that when he reviewed Appeal No. 11357 he determined that plaintiff should no longer be prescribed Lyrica "because it was non-formulary.[7]" (ECF No. 42-3, ¶ 9.) At the time – June 2010 - plaintiff was being prescribed morphine, Cymbalta, and Methocarbamol. Smith felt that because plaintiff was on these other medications that had pain-relieving properties, discontinuing Lyrica was "within the standard of care." (Id. ¶ 10.) In his declaration, Smith does not explain whether or not he had responsibility for discontinuing plaintiff's prescription for Methocarbamol, as plaintiff alleges.

Medication records and doctors' notes show that plaintiff was taking Methocarbamol on February 17, 2010, March 24, 2010, May 13, 2010, and July 2, 2010. (ECF No. 42-6 at 16, 17; ECF No. 42-13 at 10, 12.) Plaintiff provides evidence in the form of a note he received which states that on July 1, 2010, the "Chief Physician and Surgeon," who it appears was Smith at that time, discontinued the Methocarbamol because it was non-formulary. (ECF No. 25-3 at 90.) It appears that plaintiff first learned of the discontinuation of Methocarbamol when he attempted to renew that prescription on July 6, 2010. (Id. at 70.)

In the second level response to plaintiff's appeal, the reviewers set out plaintiff's medical appointments occurring shortly after Methocarbamol was discontinued. On July 15, 2010,

---

[7] A non-formulary medication is one not covered by insurance. https://www.merriam-webster.com/dictionary/formulary.

plaintiff was seen by neurologist Dr. Van Fossan. He had chronic pain follow-up appointments with doctors on August 2, August 26, and September 15, 2010. In addition, he had several appointments with a physical therapist during that time. (ECF No. 42-17 at 14.)

Plaintiff's medical records show that Smith saw plaintiff on September 6, 2012. (ECF No. 42-3 at 12.) At that time, plaintiff was no longer being prescribed Methocarbamol. (Id. at 13.) That record also shows that plaintiff was again taking Lyrica, which had been re-prescribed in April 2012.

### b. Are there material issues of fact regarding Smith's deliberate indifference?

Like plaintiff's allegations against Drs. Soltanian-Zadeh and Tseng, plaintiff simply disagrees with Smith's decisions regarding the prescriptions for Lyrica and Methocarbamol. Dr. Galloway noted in the second level response to plaintiff's appeal to reinstate Lyrica that plaintiff had been prescribed Gabapentin as a replacement for Lyrica and those two drugs are "analogous." (ECF No. 42-17 at 18.) Therefore, contrary to plaintiff's statements, he was in fact receiving a replacement drug. The fact that Gabapentin may not have helped sufficiently with plaintiff's pain and Lyrica was eventually reinstated does not mean the initial decision to discontinue the Lyrica prescription was made in deliberate indifference to plaintiff's pain.

With respect to Methocarbamol, the reason provided for its discontinuation was that it was non-formulary. That fact alone does not demonstrate deliberate indifference. There is no indication in the record whether Smith felt that plaintiff's other medications were sufficient. However, plaintiff's medical records show that he had several follow-up appointments regarding his pain shortly after the Methocarbamol was discontinued and that in September 2010, Dr. Tseng prescribed Baclofen, which is also a muscle relaxant. (ECF No. 42-6 at 20.) Plaintiff bears the burden of showing that there are disputed facts regarding Smith's discontinuation of Methocarbamol that require a trial. He has not done so.

On the facts before the court, it cannot be said that Smith acted with deliberate indifference to plaintiff's medical needs when he ordered discontinuation of Methocarbamol.

### 3. Retaliation by Smith

Plaintiff contends Smith discontinued his medications in retaliation for plaintiff's filing an appeal regarding his care by Soltanian-Zadeh. However, there is no evidence to support that contention. Smith's stated reason for discontinuing both medications is that both were non-formulary. To prove retaliation, plaintiff must show Smith took that action "because of" plaintiff's "protected conduct." Rhodes, 408 F.3d at 567. Plaintiff fails to demonstrate any connection between his appeal against Soltanian-Zadeh and Smith's actions.

Defendants are entitled to summary judgment on plaintiff's retaliation claim against Smith.

### G. Defendant Galloway

Plaintiff complains about Galloway's review of his Appeal No. 11837. He states that Galloway was not qualified to review the appeal and included his personal opinions in his disposition. (ECF No. 25 at 39.) Plaintiff also complains that Galloway put libelous information in his health record, which was an act of retaliation and deliberately indifferent to plaintiff's health needs. (See ECF No. 25-3 at 37.)

Defendants do not assert an exhaustion defense to plaintiff's claims against Galloway. First, they summarily argue that plaintiff cannot state a cognizable claim for relief under § 1983 and the Eighth Amendment for the denial of his appeals. That is not a correct statement of the law. The review assessment of a correctional medical official may constitute deliberate indifference if the official was aware that the underlying challenged medical decision caused plaintiff "further significant injury or the unnecessary and wanton infliction of pain," and the official purposefully failed to pursue an appropriate medical remedy. Farmer, 511 U.S. at 842; see also Jett, 439 F.3d at 1098 (prison officials, particularly those in administrative positions, may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help"). Plaintiff's claims that Galloway was deliberately indifferent when he reviewed, and denied, plaintiff's appeal is cognizable under § 1983.

Defendants' second argument is that plaintiff fails to show Galloway acted with deliberate indifference. This court agrees. In Appeal No. 11837, plaintiff complained of Smith's conduct in

discontinuing Lyrica and Methocarbamol. (ECF No. 42-17 at 11.) He asked that Lyrica and other medications be reinstated and that he be seen by a neurosurgeon, not the neurologist Smith had referred him to. (Id. at 12.) Galloway reviewed plaintiff's appeal. He noted that a neurosurgeon and a neurologist had agreed that plaintiff was not a candidate for surgery at that time. (Id. at 17.) He also noted that plaintiff was taking a medication to replace the Lyrica and that if it was unsuccessful, Galloway would support reinstating the Lyrica. (Id. at 14-15, 18.)

To the extent plaintiff is complaining of Galloway's role in denial of his appeal, plaintiff fails to show that Galloway denied his appeal with deliberate indifference to plaintiff's health. In fact, Galloway's decision shows that he considered plaintiff's medications and was supportive of change if the current medication regimen was not successful. With respect to plaintiff's complaint about Galloway's comments in the appeal response, while some of Galloway's comments may have been unnecessary, plaintiff does not show how they caused him any medical harm or how they show Galloway was deliberately indifferent to his health.

To the extent plaintiff is also alleging Galloway acted in a retaliatory manner, plaintiff fails to present any facts to support the intent aspect of that claim. To establish retaliation, plaintiff must prove: (1) a state actor took some adverse action against plaintiff (2) because of (3) his protected conduct, and that such action (4) chilled plaintiff's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68. Plaintiff makes no showing that Galloway denied his appeal because plaintiff had exercised his First Amendment rights by raising complaints.

## CONCLUSION

This court finds that plaintiff failed to exhaust the following claims and, therefore, defendants are entitled to summary judgment on them:

(1) all claims against defendant Todd;

(2) all claims against defendant Barnett;

(3) all claims against defendant Williams;

(4) any claim against defendant Soltanian-Zadeh except plaintiff's claim that Soltanian-Zadeh was deliberately indifferent when he discontinued plaintiff's Lyrica prescription;

(5)  any claim against defendant Tseng except the claims that Tseng discontinued plaintiff's morphine and Baclofen prescriptions and that Tseng failed to document plaintiff's complaints of electric shocks throughout his limbs;

(6) any claim against defendant Smith except the claims that Smith was deliberately indifferent when he discontinued plaintiff's prescriptions for Lyrica and Methocarbamol and that Smith actions were done in retaliation for plaintiff's complaint about Soltanian-Zadeh;

With respect to plaintiff's remaining claims against defendants Soltanian-Zadeh, Tseng, Smith, and Galloway, plaintiff bears the burden of showing that each defendant was deliberately indifferent to his serious medical needs.  However, he has failed to put forth evidence to demonstrate there are triable issues of fact necessary to make that determination.  Further, there is "an absence of evidence to support" a determination that each defendant was deliberately indifferent.  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).  Accordingly, summary judgment should be entered for defendants.[8]  See Celotex, 477 U.S. at 322.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 42) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the

////

////

////

////

////

---

[8] Because this court finds defendants should succeed on their exhaustion defense and the merits of their exhausted claims, this court need not reach the issue of qualified immunity.

specified time may result in waiver of the right to appeal the district court's order.  Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 26, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/
DLB1/prisoner-civil rights/sche1277.msj fr